JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* HATO REY PSYCHIATRIC HOSPITAL, demandado.

*Número:* CE-86-58        *Resuelto:* 9 de junio de 1987

*Juan Antonio Navarro*, de la División Legal de la Junta de Relaciones del Trabajo de Puerto Rico, abogado de la peticionaria; *Ginoris Vizcarra de López-Lay*, de *López-Lay & Vizcarra*, abogada del demandado.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

La Junta de Relaciones del Trabajo (en adelante la Junta) ha recurrido ante este Tribunal para que pongamos en vigor un laudo emitido *ex parte* por un árbitro del

Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos.

Las Srtas. Aida Ubiles y Eneida Ortiz se desempeñaban como enfermeras prácticas con *status* de empleadas permanentes en el Hato Rey Psychiatric Hospital (en adelante Hospital). Ambas fueron despedidas el 17 de enero de 1985. De conformidad con el Procedimiento de Quejas y Agravios, establecido por el Art. XXVII del Convenio Colectivo suscrito por el Hospital y la Unión Independiente de Empleados del Hato Rey Psychiatric Hospital (en adelante la Unión), esta última sometió una querella por el despido injustificado de las dos unionadas ante el Negociado de Conciliación y Arbitraje.

Representantes de cada una de las partes seleccionaron de mutuo acuerdo al árbitro Fernando Hernández Benítez para entender en la querella. El caso fue señalado para audiencia a celebrarse el 23 de abril de 1985, mas las partes suscribieron, el 18 de abril, una carta en la que solicitaron su aplazamiento.(¹) El caso volvió a señalarse para vista que se llevaría a cabo el 30 de julio de 1985. El nuevo señalamiento fue debidamente notificado a los representantes de cada una de las partes.

El día de la vista comparecieron las empleadas despedidas, representadas por su abogada. Por parte del Hospital no compareció representante alguno. No solicitó aplazamiento o suspensión de la vista ni notificó sobre la razón de su incomparecencia.

Así las cosas, el árbitro celebró la vista en un procedimiento *ex parte* al amparo del Reglamento para el Orden Interno de los Servicios de Arbitraje del De-

---

(¹) De acuerdo con el laudo emitido, la razón de la solicitud fue que las partes se encontraban "dilucidando las cuestiones envueltas, existiendo por lo tanto, la posibilidad de que no [fuera] necesario continuar con el procedimiento de arbitraje". Ap., pág. 11 n. 1.

partamento del Trabajo y Recursos Humanos, y de la jurisprudencia en el área de derecho laboral. Procedió a recibir la prueba aportada por la parte querellante(2) y concluyó que si bien el Reglamento del Negociado establece en su Art. VII, inciso c(2),(3) que el "árbitro podrá proceder con la celebración de la vista y emitir su decisión sólo a base de la prueba presentada por la parte querellante", en un caso disciplinario no se le puede exigir a dicha parte que satisfaga el peso de la prueba. Finalmente, el árbitro determinó que el despido no estuvo justificado y ordenó la reposición inmediata de las empleadas despedidas en su empleo y el pago de salarios dejados de devengar desde el 17 de enero de 1985 a la fecha de su reposición.

Ante la negativa del Hospital de cumplir con el referido laudo, a pesar de las gestiones realizadas, la Unión solicitó a la Junta que hiciera cumplir el laudo emitido el 1ro de agosto de 1985. Luego de realizar la investigación pertinente, la Junta dictó resolución el 4 de diciembre en la cual ordenó a su división legal que acudiera ante nos para compeler al Hospital a cumplir con el laudo.

■ Concedimos término al Hospital para que "[mostrara] causa por la cual no [debía] ponerse en vigor el laudo". El Hospital y la Junta han comparecido.(4)

---

(2) La Unión presentó como evidencia una copia del Convenio Colectivo vigente desde el 1ro de julio de 1983 hasta el 30 de junio de 1986. La Sec. 2(E) del Art. XXVII dispone que "[e]l procedimiento a seguirse en la vista de arbitraje será aqu[e]l que el Arbitro determine conforme a las reglas establecidas por el Negociado de Conciliación y Arbitraje". La Sec. 6 del Art. XIII establece que "[n]o tendrán derecho al Plan de Retiro los que sean separados de su empleo por justa causa y comprobada que fuere mediante el Procedimiento de Quejas y Agravios y el arbitraje provisto por este Convenio".

(3) El inciso c(2) del Reglamento establece que "[s]i una de las partes o ambas, comparecen a la vista luego de haber sido notificadas por el árbitro, sin haber solicitado o conseguido aplazamiento o suspensión de la vista el árbitro: ... si la parte contraria es la que comparece, podrá proceder con la celebración de la vista y emitir su decisión sólo a base de la prueba presentada por la parte querellante".

(4) No consideraremos documento alguno que no haya sido presentado al árbitro que intervino en el caso de autos ni entenderemos en los argumentos que,

# I

■ A pesar de que el Hospital hace varios planteamientos en su escrito, únicamente argumenta sobre uno de ellos:[5] que confirmar el laudo constituiría una violación al debido proceso de ley. Discutiremos únicamente este señalamiento, pues no debe ser motivo para revisar, modificar o de alguna manera cambiar un laudo o una decisión de un tribunal de instancia la sola alegación de un error que luego no se fundamenta o discute. Véanse: *Junta Rel. Trabajo* v. *Simmons Int'l., Ltd.,* 78 D.P.R. 375, 384–385 (1955); *Santos Green* v. *Cruz,* 100 D.P.R. 9, 15 (1971); *Pueblo* v. *Matos Pretto,* 93 D.P.R. 113 (1966); *Pueblo* v. *Febres,* 78 D.P.R. 893, 898 (1956); *De Jesús* v. *Assad,* 63 D.P.R. 137, 140 (1944); *Morales* v. *Cruz Vélez,* 34 D.P.R. 834, 842 (1926); *Pueblo* v. *Cruz,* 34 D.P.R. 211, 212 (1925).

■ En el caso de autos quedó demostrada la existencia de un convenio entre las partes que provee un procedimiento de quejas y agravios que eventualmente culmina en un procedimiento de arbitraje. Sobre este mecanismo hemos dicho que la ley entre las partes la establece el acuerdo de sumisión sometido al árbitro, unido al convenio colectivo que dispone que el árbitro debe decidir conforme a derecho. *J.R.T.* v. *Caribbean Towers, Inc.,* 99 D.P.R. 595 (1971). De ahí que el rol de este Tribunal, al revisar la validez de un laudo de arbitraje bajo un convenio colectivo, es verdaderamente estrecho y limitado, de clara autorrestricción o abstención judicial, cuando el laudo no tiene que ser emitido conforme a derecho. *U.I.L. de Ponce* v. *Dest. Serrallés, Inc.,* 116 D.P.R. 348 (1985); *J.R.T.* v.

---

a base de dichos documentos, entran en los méritos del caso y que no fueron planteados al árbitro. Regla 34(c) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. I-A.

[5] Señala que el laudo objeto de este recurso no debe ser puesto en vigor porque violenta la política pública, viola el debido proceso de ley y el árbitro se excedió en la autoridad que le fue conferida por el Convenio Colectivo.

*National Packing Co.*, 112 D.P.R. 162 (1982); *Colón Molinary* v. *A.A.A.*, 103 D.P.R. 143 (1974). Condicionar un laudo a que sea "conforme a derecho" significa que el árbitro no puede ignorar las normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y Puerto Rico en el campo de derecho laboral, y que se reputarán persuasivas las decisiones de los tribunales de primera instancia y de agencias administrativas, y los laudos y escritos de reputados árbitros. *Sonic Knitting Industries* v. *I.L.G.W.U.*, 106 D.P.R. 557 (1977).

"Los procedimientos de arbitraje y los laudos emitidos en el campo laboral gozan ante los tribunales de justicia de una especial deferencia por constituir el trámite ideal para resolver disputas obrero-patronales de modo rápido, cómodo, menos costoso y técnico." *S.I.U. de P.R.* v. *Otis Elevator Co.*, 105 D.P.R. 832, 836 (1977); *U.I.L. de Ponce* v. *Dest. Serrallés, Inc.*, supra. Siempre hemos mantenido que los acuerdos sobre arbitraje deben hacerse cumplir de manera estricta si la sumisión(6) es clara y libre de ambigüedad, haciendo valer así la política pública que alienta el arbitraje como la manera más sencilla, menos formal y más rápida para solucionar controversias. *J.R.T.* v. *Otis Elevator Co.*, 105 D.P.R. 195 (1976).

Es sabido, sin embargo, que cuando un laudo tiene que ser emitido conforme a derecho, cualquiera de las partes puede recurrir ante el foro judicial para impugnarlo por fraude, conducta impropia, *falta de debido procedimiento de ley*, violación de la política pública, falta de jurisdicción, que el laudo no resuelve todas las cuestiones en controversia que se sometieron, *S.I.U. de P.R.* v. *Otis Elevator Co.*, supra; *J.R.T.* v. *Otis Elevator Co.*, supra; *Colón Molinary* v. *A.A.A.*,

---

(6) Una sumisión para arbitrar una querella de una unión no tiene necesariamente que hacerse por escrito. *J.R.T.* v. *P.R. Telephone Co.*, 91 D.P.R. 909 (1965).

supra; *Junta Relaciones del Trabajo* v. *N.Y.&P.R. S/S Co.*, 69 D.P.R. 782 (1949), y para revisar su corrección y validez jurídica. *U.I.L. de Ponce* v. *Dest. Serrallés, Inc.*, supra; *Sonic Knitting Industries* v. *I.L.G.W.U.*, supra.

El Hospital nos pide que anulemos el laudo porque fue privado del debido proceso al llevarse a cabo el procedimiento en ausencia de un representante suyo en la vista ante el árbitro. Surge del laudo emitido que el señalamiento de la vista fue notificado a todas las partes. Ante nosotros aduce por primera vez, como razón para dicha ausencia, que el Administrador del Hospital "olvidó completamente en forma inadvertida el señalamiento de la vista ... ante el Negociado" debido a que ese mismo día se llevaba a cabo la mudanza del Hospital a nuevas facilidades en Bayamón. Cabe señalar, sin embargo, que posteriormente la Junta le ofreció la oportunidad de explicar su falta de cumplimiento con el laudo; en esa ocasión el Hospital no adujo razón para su falta de comparecencia a la vista. No es hasta que le requerimos que mostrara causa por la cual no debíamos poner en vigor el laudo que explica su incomparecencia.

█ Ya hemos expresado que la violación del debido proceso de ley es una de las causas de nulidad de un laudo de arbitraje, *Hermandad Unión de Empleados* v. *F.S.E.*, 112 D.P.R. 51, 55 (1982); *J.R.T.* v. *Securitas, Inc.*, 111 D.P.R. 580 (1981); *J.R.T.* v. *Aut. de Comunicaciones*, 110 D.P.R. 879 (1981); esto no significa que la implantación de un procedimiento de arbitraje que ha sido pactado previamente dependa de los deseos de una de las partes de comparecer al mismo. *Hermandad Unión de Empleados* v. *F.S.E.*, supra. También se ha dicho que resultaría en un estado de anarquía si las partes pudieran eludir las decisiones por el simple hecho de no comparecer. *Hod Carriers* v. *Pennsylvania Pipeline*, 108 L.R.R.M. 2550 (1980); *Retail Employees* v. *Lion Dry Goods, Inc.*, 67 L.R.R.M. 2871, *cert.* denegado, 390 U.S. 1013, 67 L.R.R.M. 2898.

Una cláusula de arbitraje en un convenio no tendría sentido si su implantación dependiera de la voluntariedad de cada parte para presentar su caso, pues la parte que no desea un cambio en las relaciones podría anular el arbitraje sencillamente rehusando a comparecer a la vista. *Velvet Textile Corp.*, 7 L.A. 685, 691 (1947); F. Elkouri y E. Elkouri, *How Arbitration Works*, 4ta ed., Washington, The Bureau of National Affairs, 1985, pág. 245. El Hospital fue debidamente notificado; no se excusó ni compareció. La razón que ahora aduce para justificar su ausencia en el procedimiento no es meritoria. No ha demostrado que confirmar el laudo emitido lo privara del debido procedimiento de ley. Se ha resuelto que el requisito fundamental de debido proceso es la concesión de la oportunidad de ser oído, *J.R.T.* v. *A.E.E.*, 117 D.P.R. 222 (1986); *Mullane* v. *Central Hanover Tr. Co.*, 339 U.S. 306 (1949); *Grannis* v. *Ordean*, 234 U.S. 385 (1914). El Hospital tuvo esa oportunidad. El procedimiento seguido por el árbitro fue justo y razonable; se ajusta a las exigencias del debido proceso de ley —notificación y conocimiento de los cargos, vista y oportunidad de someter evidencia. *S.I.U. de P.R.* v. *Otis Elevator Co.*, supra.

## II

La decisión tomada por el árbitro en cuanto a que el peso de la prueba en este tipo de caso corresponde al patrono es correcta.

La regla generalmente reconocida por los árbitros sobre quién tiene el peso de la prueba es, al igual que en los casos ante los tribunales, que la parte que sostiene la afirmativa de la cuestión en controversia deberá producir prueba suficiente para sostener los hechos esenciales de su reclamación. El peso de la prueba descansa en la parte contra quien el árbitro fallaría si no se presentara evidencia

por ninguna de las partes.(⁷) R. H. Gorske, *Burden of Proof in Grievance Arbitration*, 43 Marq. L. Rev. 135, 145 (1959).

En algunos casos, los árbitros han decidido que la parte que sostiene la afirmativa de la controversia no necesariamente tiene el peso de la prueba. Esto es así particularmente en casos en que los hechos fundamentales están bajo el exclusivo conocimiento de la parte contraria. En los casos de despido, los árbitros han sostenido, casi invariablemente, que el peso de probar la "justa causa" descansa en el patrono debido a que la justificación es una defensa afirmativa. En los casos de arbitraje, por lo tanto, donde ya se ha impuesto una penalidad industrial severa y extrema —el despido— es el patrono quien deberá probar ante el árbitro que el mismo fue justificado. *Hilton International Co.* v. *Local 610*, 119 L.R.R.M. 2011 (1985); *Allis-Chalmers Mfg. Co.*, 29 L.A. 356 (1957); Elkouri y Elkouri, *op. cit.*, pág. 661.

En los casos de despido al igual que en otros casos de acciones disciplinarias, "es el patrono el que, de ordinario, está en control y en posesión de toda la información necesaria para que la cuestión pueda ser resuelta de una o la otra forma". *J.R.T.* v. *A.E.E.*, supra.

Ante los fundamentos expuestos concluimos que el árbitro tenía facultad para celebrar la vista en rebeldía y para no exigir a las querellantes que cargaran con el peso de probar que su despido fue injustificado. Resolvemos, por lo tanto, que se trata de un laudo válido por no adolecer de ninguna de

---

(⁷) Resulta difícil hacer generalizaciones sobre la aplicación de la doctrina del peso de la prueba en el campo del arbitraje, ya que el término tiene varios significados y con frecuencia se usa sin hacer una definición. Puede significar el peso de alegar (el cual no aplica en el arbitraje), el peso de producir evidencia, y el peso de persuasión. F. Elkouri y E. Elkouri, *How Arbitration Works*, 4ta ed., Washington, The Bureau of National Affairs, 1985, pág. 324, n. 138; R. H. Gorske, *Burden of Proof in Grievance Arbitration*, 43 Marq. L. Rev. 135 (1959).

las causas de nulidad que hemos reconocido. Por todo lo anterior, *procede que se ponga en vigor el laudo emitido.*

El Juez Asociado Señor Rebollo López no intervino. El Juez Asociado Señor Hernández Denton concurre únicamente con la parte I de la opinión emitida por el Tribunal, por entender que éste era el único asunto en controversia.