ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| ESSENTIUM GROUP, LLC.<br><br>Recurrido<br><br>v.<br><br>INTEGRA GROUP, LLC.; FRANCISCO BONET RIVERA; YARISA DÍAZ SÁNCHEZ; CARLOS ORTÍZ VÁZQUEZ<br><br>Peticionarios | KLCE202500527 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2024CV06341<br><br>Sobre: Impugnación o Confirmación de Laudo |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm

Prats Palerm, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de julio de 2025.

Comparecen Francisco Bonet Rivera (señor Bonet Rivera), Yarisa Díaz Sánchez (señora Díaz Sánchez), Carlos Ortiz Vázquez (señor Ortiz Vázquez) e Integra Group, LLC (Integra Group), (en conjunto, los Peticionarios), y solicitan la revocación de la Sentencia emitida y notificada el 15 de abril de 2025, por el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario). Mediante la referida Sentencia, el foro primario declaró *No Ha Lugar* la *Petición de Revocación de Laudo de Arbitraje* presentada por los Peticionarios, desestimó la misma, declaró *Ha Lugar* la *Oposición a Petición de Revocación de Laudo de Arbitraje* presentada por Essentium Group, LLC (Essentium o la Recurrida) y concluyó que tanto el señor Bonet Rivera como Integra Group se sometieron voluntariamente al arbitraje y que está impedido de interferir con el criterio del Árbitro del American Arbitration Association en cuanto a su apreciación de la prueba al emitir el Laudo objeto de revisión.

Por los fundamentos que expondremos a continuación denegamos la expedición del auto de *certiorari*.

I

El 1 de enero de 2017, el señor Ortiz Vázquez suscribió un contrato de servicios profesionales con Essentium para la coordinación de proyectos, redacción de propuestas y/o memorandos, consultoría gubernamental, manejo de relación de clientes, entre otros.[1] Posteriormente, el 27 de marzo de 2017, la señora Díaz Sánchez suscribió también un contrato de servicios profesionales con Essentium con iguales fines, para la coordinación de proyectos, redacción de propuestas y/o memorandos, consultoría gubernamental, manejo de relación de clientes, entre otros.[2] En ambos contratos, las partes acordaron que el contrato se regiría e interpretaría de acuerdo a las leyes del Estado Libre Asociado de Puerto Rico; que cualquier controversia, reclamo o causa de acción que surgiera a raíz del contrato, sería adjudicada mediante el procedimiento de arbitraje en Puerto Rico y que las normas que gobernarían dicho arbitraje serían las de la American Arbitration Association.[3] En ambos contratos tanto el señor Ortiz Vázquez como la señora Díaz Sánchez se obligaron a mantener un deber de lealtad con Essentium que incluía no tener intereses adversos a dicha parte, que incluían representación de clientes u ofrecer servicios a clientes que tuvieran o pudieran tener intereses encontrados con Essentium o sus clientes.[4] Tanto el señor Ortiz Vázquez como la señora Díaz Sánchez en sus respectivos contratos con Essentium, se obligaron además, a divulgar continuamente a Essentium las circunstancias de sus relaciones con clientes y terceras personas y cualquier interés que pudiere influir al momento de otorgar el contrato o durante su vigencia.[5]

El 24 de febrero de 2022, Essentium presentó Demanda de Arbitraje en contra de los Peticionarios ante la American Arbitration Association en

---

[1] *Véase, Contrato de Servicios Profesionales*, entre Essntium y el señor Ortiz Vázquez, páginas 27-31 del Apéndice de la *Petición de Certiorari*

[2] *Véase, Contrato de Servicios Profesionales*, entre Essntium y la señora Díaz Sánchez, páginas 32-36 del Apéndice de la *Petición de Certiorari*

[3] Véase páginas 31 y 36 del Apéndice la *Petición de Certiorari.*

[4] Véase páginas 29 y 34 del Apéndice la *Petición de Certiorari*

[5] *Id.*

la que alegó que el señor Ortiz Vázquez, la señora Díaz Sánchez, el señor Bonet Rivera e Integra Group le causaron daños al apropiarse de material confidencial de Essentium que constituía un secreto de negocio y al violentar el deber de fiducia al apropiarse de clientes y crear Integra Group.

El 5 y 6 de diciembre de 2023 se celebró vista de arbitraje ante el Lcdo. Jorge P. Salas, árbitro designando por la American Arbitration Association (AAA) en el Caso Núm. 01-22-0000-8136. Essentium presentó tres testigos y prueba evidenciaria. Sin embargo, los Peticionarios renunciaron al derecho de ofrecer prueba en el caso. El Árbitro concedió derecho a las partes para presentar sus memorandos. Como parte de su memorando Essentium discutió la concesión y el cálculo de los daños a adjudicarse como remedio por la reclamación, estos se apoyaron en la prueba presentada durante la vista.[6]

El 10 de abril de 2024, la AAA emitió Laudo de Arbitraje (Laudo) suscrito por el Lcdo. Jorge (Árbitro) en el Caso Núm. 01-22-0000-8136.[7] En dicho Laudo el Árbitro de la AAA resolvió que la cláusula de no competencia suscrita por Essentium con la señora Díaz Sánchez y el señor Ortiz Vázquez era nula toda vez que se extendía más de un año del tiempo límite.  De igual forma, el Árbitro de la AAA concluyó en el Laudo que estos y el señor Bonet Rivera violaron las obligaciones contraídas con Essentium al incurrir en conflicto de interés, al violar la confidencialidad, su deber de lealtad y fiducia y al utilizar para su beneficio personal información obtenida de por Essentium. Asimismo, el Laudo dispuso que Integra Group debía responder solidariamente al haberse beneficiado de dicho incumplimiento por lo que les impuso el pago solidario de $42,731.24 por concepto de los daños sufridos por Essentium.[8]

En desacuerdo, el 8 de julio de 2024, los Peticionarios presentaron *Petición de Revocación de Laudo de Arbitraje* ante el foro primario.[9]

---

[6] *Véase* páginas 54-60 del Apéndice de la *Petición de Certiorari*
[7] *Véase* páginas 17-26 del Apéndice de la *Petición de Certiorari.*
[8] *Id.*
[9] *Véase* páginas 1-16 del Apéndice de la *Petición de Certiorari.*

Esbozaron que el Árbitro carecía de jurisdicción sobre Integra Group y el señor Bonet Rivera toda vez que había ausencia de contrato escrito en el que estos se hubieran sometido a arbitraje por lo que procedía la revocación del Laudo en cuanto a estos. De igual forma, arguyeron que Essentium no alegó daños por ingresos dejados de percibir ni desfiló prueba sobre estos extremos, por lo que el Árbitro estaba impedido de adjudicar o conceder remedio en daños a su favor. Asimismo, los Peticionarios alegaron que el Laudo emitido por el Árbitro de la AAA no estaba sustentado por la prueba desfilada en la vista en sus méritos sino por alegaciones y documentos presentados en el *Memorando de Derecho* sometido con posterioridad.

Por su parte, el 16 de agosto de 2024, Essentium presentó *Oposición a Petición de Revocación de Laudo de Arbitraje y Solicitud de Confirmación de Laudo.*[10] En síntesis, Essentium sostuvo que las impugnaciones de los Peticionarios al Laudo quedan fuera del alcance de la revisión conferida por la Ley de Arbitraje por lo que solicitaron al foro primario la desestimación sumaria de su petición.

El 23 de agosto de 2024, los Peticionarios presentaron *Réplica a Oposición a Petición de Revocación de Laudo de Arbitraje.*[11] Allí reiteraron que el Árbitro asumió jurisdicción sobre partes que no tenía y que este basó su determinación en documentos presentados con posterioridad al juicio, lo que violentó el derecho de los Peticionarios, a un debido proceso de ley por lo que procedía la revocación del Laudo. Asimismo, reiteraron que Essentium mintió en el procedimiento de arbitraje al alegar que entre esta y el señor Bonet Rivera había un contrato firmado que contuviera una cláusula de arbitraje compulsorio.

En respuesta, el 26 de agosto de 2024, Essentium presentó *Dúplica a Réplica a Oposición a Petición de Revocación de Laudo de Arbitraje.*[12] Allí

---

[10] *Véase* páginas 86-100 del Apéndice de la *Petición de Certiorari.*
[11] *Véase* páginas 101-112 del Apéndice de la *Petición de Certiorari.*
[12] *Véase* páginas 108-112 del Apéndice de la *Petición de Certiorari.*

expuso que el hecho de que no hubiese encontrado el contrato firmado no implicaba que hubiese mentido y que, sobre esos extremos, el señor Bonet Rivera reconoció que había firmado un contrato con Essentium. Afirmó, además, que los cálculos del Memorando de Derecho estaban sustentados por la prueba desfilada por lo que la alegación de violación al debido proceso de ley era improcedente.

Mediante Sentencia emitida y notificada el 15 de abril de 2025, el foro primario declaró *No Ha Lugar* la *Petición de Revocación de Laudo de Arbitraje* presentada por los Peticionarios y desestimó la misma. Además, el TPI declaró *Ha Lugar* la *Oposición a Petición de Revocación de Laudo de Arbitraje* presentada por Essentium. Razonó el foro primario que tanto el señor Bonet Rivera como Integra Group se sometieron voluntariamente al arbitraje; que estaba impedido de interferir con el criterio del Árbitro en cuanto a su apreciación de la prueba al emitir el Laudo y que había ausencia de error del Árbitro en su aplicación del derecho.

Inconformes, los Peticionarios recurren ante nos mediante el recurso de epígrafe y señalan la comisión de los siguientes errores por parte del foro primario:

> PRIMERO: COMETIÓ GRAVE ERROR Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL SOSTENER QUE AÚN CUANDO NO EXISTE CONTRATO ESCRITO ALGUNO, EL ÁRBITRO TENÍA JURISDICCIÓN SOBRE INTEGRA, LLC Y FRANCISO BONET RIVERA.

> SEGUNDO: COMETIÓ GRAVE ERROR Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE EL ÁRBITRO TENÍA FACULTAD PARA CONSIDERAR PRUEBA SOMETIDA POR LOS ABOGADOS DE LA CORPORACIÓN APELADA LUEGO DE CELEBRADO EL JUICIO Y SOMETIDO EL CASO.

> TERCERO: COMETIÓ GRAVE ERROR Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE "UNA MERA DISCREPANCIA DE CRITERIO" CON EL ÁRBITRO SOBRE QUIENES ERAN CLIENTES Y CUALES ERAN POTENCIALES CLIENTES DE LA CORPORACIÓN APELADA, NO JUSTIFICA LA INTERVENCIÓN JUDICIAL.

El 10 de junio de 2025, Essentium compareció ante nos mediante *Oposición a la Expedición del Auto de Certiorari.* En síntesis, Essentium

expone que los Peticionarios no han logrado satisfacer el estándar de revisión judicial establecido por la Ley de Arbitraje, *supra*, y la Regla 40 de Reglamento del Tribunal de Apelaciones y que el *certiorari* constituye un intento dilatorio que busca revivir controversias finalmente resueltas mediante un laudo de arbitraje emitido en derecho y confirmado por sentencia válida emitida por el Tribunal de Primera Instancia.

Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

A.

El mecanismo para que el Tribunal de Apelaciones revise las sentencias finales dictadas por el Tribunal de Primera Instancia, referentes a revisiones de laudos de arbitraje es el *certiorari. Hosp. del Maestro v. U.N.T.S.*, 151 DPR 934, 942 (2000); véase, Regla 32 (D) *Reglamento del Tribunal de Apelaciones*, 4 LPRA Ap. XXII-B. Este vehículo procesal permite a un tribunal de mayor jerarquía evaluar las determinaciones judiciales de un foro inferior, con el fin de corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005).

Es sabido que este foro intermedio tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra.* Claro está, el ejercicio de la discreción no equivale a hacer abstracción del resto del derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v.*

*Padró, supra,* pág. 335; *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990).

Para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de Certiorari*, 4 LPRA Ap. XXII-B. Así reza:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Es norma reiterada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, *"salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018), que cita con aprobación a *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155

(2000); *Meléndez Vega v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

B.

Nuestro ordenamiento jurídico permite "que las partes en un contrato se obliguen a llevar ante un árbitro, mediante un procedimiento de arbitraje, las posibles controversias futuras relacionadas con su contrato". *S.L.G. Méndez-Acevedo v. Nieves Rivera*, 179 DPR 359, 366 (2010). El arbitraje es un método alternativo de solución de disputas, el cual está disponible como una alternativa al litigio tradicional. *Aut. Puertos v. HEO*, 186 DPR 417, 424 (2012). Tal proceso le impone un carácter excluyente al proceso judicial, ya que una cláusula de arbitraje es un contrato que impide a los jueces y tribunales conocer en primera instancia de los conflictos o cuestiones litigiosas sometidas a arbitraje. *Indulac v. Central General de Trabajadores*, 207 DPR 279, 293 (2021).

En Puerto Rico existe una vigorosa política pública en favor del arbitraje. Esta, se recoge en la Ley Núm. 376 del 8 de mayo de 1951, *Ley de Arbitraje Comercial en Puerto Rico* (Ley de Arbitraje), 32 LPRA sec. 3201, *et seq.* Así, dos o más partes podrán convenir por escrito en someter a arbitraje, cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje. De igual forma, podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Art. 1 de la *Ley de Arbitraje*, 32 LPRA Sec. 3201. El convenio alcanzado por las partes será válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para su revocación. *Íd.* Cuando se pacta un proceso de arbitraje en un contrato, los tribunales carecen de discreción para determinar su eficacia y tienen que dar cumplimiento al arbitraje según acordado. *H.R. Inc. v. Vissepo & Diez Constr.,* 190 DPR 597 (2014), citando a *S.L.G. Méndez Acevedo v. Nieves Rivera*, 179 DPR 359, 368 (2010).

Cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece nuestra deferencia. *López v. Destilería Serrallés*, 90 DPR 245 (1964); *JRT v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318, (1941). Nuestro más Alto Foro ha expresado que, aunque la intervención no esté vedada, ante un convenio de arbitraje, lo más prudente es la abstención judicial. *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133, 142 (1994). Sin embargo, la deferencia brindada al procedimiento de arbitraje cede cuando se demuestra la existencia de: (1) fraude; (2) conducta impropia del árbitro; (3) falta del debido proceso de ley; (4) ausencia de jurisdicción; u (5) omisión de resolver todas las cuestiones en disputa o que sea contrario a la política pública. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 369 (2011).

Por otra parte, si las partes pactan que el laudo arbitral sea conforme a derecho, el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas, en el campo laboral, de derecho sustantivo emitidas por el Tribunal Supremo de Estados Unidos, y el de Puerto Rico. *JRT v. Hato Rey Psychiatric Hospital,* 119 DPR 62, 68 (1987). Así dispuesto, los tribunales podrán corregir errores jurídicos, en atención al derecho aplicable. *Íd.* En tal supuesto, es la norma que los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas. *C.O.P.R. v. S.P.U.*, *supra*, pág. 370. En otras palabras, procede la anulación del laudo solo si no se ha resuelto la controversia conforme a derecho. *Íd.* Sobre estos extremos la doctrina vigente establece expresamente lo siguiente:

> [L]as determinaciones de hechos en laudos de arbitraje conforme a derecho pueden ser revisadas cuando no están sostenidas por evidencia sustancial en el expediente. Claro está, aun en estos casos, los tribunales de instancia no deben inclinarse a decretar la nulidad del fallo **a menos que efectivamente este no haya resuelto la controversia conforme a derecho**. Una mera discrepancia de criterio no justifica la intervención judicial, pues ello derrotaría los propósitos fundamentales del arbitraje. (Citas omitidas y énfasis suplido).

*Constructora Estelar v. Aut. Edif. Pub.*, 183 DPR 1, 33-34 (2011).

En cuanto a la función de los tribunales para revisar un laudo de arbitraje, se ha establecido que dicha tarea es análoga a aquella de una revisión administrativa y que el rol del foro primario es el de un foro apelativo. *Constructora Estelar v. AEP, supra.* Es de suma importancia auscultar la extensión de la facultad conferida al árbitro por las partes. Así, si las partes <u>no</u> acordaron que el laudo sea conforme a derecho, finalizado el trámite de arbitraje, las determinaciones realizadas por el árbitro son finales e inapelables y no pueden litigarse ante los tribunales. *Constructora Estelar v. AEP, supra,* citando al caso normativo sobre el arbitraje comercial *Autoridad Sobre Hogares de PR v. Tribunal Superior,* 82 DPR 344 (1961). De igual forma, en tales circunstancias no podrá indagarse sobre el proceso deliberativo, mental y decisional del árbitro. *Id.* La *Ley de Arbitraje, supra,* establece que el tribunal podrá revocar un laudo de arbitraje cuando:

   a. se obtuvo mediante corrupción, fraude u otro medio indebido.
   b. hubo parcialidad o corrupción evidente de los árbitros o cualquiera de ellos.
   c. los árbitros actuaren erróneamente al rehusar posponer la vista luego de mostrarse causa justificada para ello, o al rehusar oír evidencia pertinente y material a la controversia, o cuando incurrieren en cualquier error que perjudique los derechos de cualquiera de las partes.
   d. los árbitros se extendieren en sus funciones o cuando el laudo emitido no resolviera en forma final y definitiva la controversia sometida; o
   e. si no hubo sumisión o convenio de arbitraje válido y el procedimiento se inició sin diligenciar la notificación de intención de arbitrar.[13]

### III

En el caso que nos ocupa, Essentium obtuvo del foro primario la confirmación judicial del laudo arbitral mediante la sentencia emitida por el Hon. Juez Alexis J. Carlo Ríos el 15 de abril de 2025. Tras evaluar los planteamientos de la Peticionarios dirigidos a obtener la revocación del Laudo, el foro primario al emitir la Sentencia objeto de revisión ante nos,

---

[13] 31 LPRA Sec. 3222.

reafirmó los límites de la revisión judicial de los laudos arbitrales, así como, la extensa jurisprudencia aplicable del Tribunal Supremo de Puerto Rico que protege vigorosamente la autonomía y finalidad de los procesos arbitrales.

Atinente a la controversia ante nuestra consideración, es la contención principal de los Peticionarios, que incidió el foro primario al concluir que aun sin contrato escrito, el Árbitro de la AAA tenía jurisdicción sobre Integra Group y el señor Bonet Rivera toda vez que estos se sometieron voluntariamente al arbitraje. Arguyen, además, que incidió igualmente el foro primario al resolver que el Árbitro de la AAA tenía facultad para considerar toda la prueba sometida luego de celebrada la vista y al concluir que una mera discrepancia de criterio con el Árbitro sobre quienes eran clientes de Essentium y cuales eran potenciales clientes, no justifica la intervención judicial.

Luego de examinar el expediente, a la luz de los criterios de la Regla 40 de nuestro Reglamento, *supra,* no identificamos razón por la cual esta Curia deba intervenir con el dictamen recurrido. Ello, ya que no se presentan ninguna de las situaciones que allí en la interpretación, o la aplicación de cualquier norma procesal o de derecho sustantivo se contemplan. Recordemos además, que nuestro ordenamiento jurídico nos brinda la discreción de intervenir mediante recurso discrecional de *certiorari* **en aquellas sentencias finales dictadas por el Tribunal de Primera Instancia, referentes a revisiones de laudos de arbitraje** en los que exista ausencia de jurisdicción, conducta impropia del árbitro, falta del debido proceso de ley, omisión de resolver todas las cuestiones en disputa, arbitrariariedad, abuso de discreción o cuando de la actuación del foro surja un error. *Véase, Hosp. del Maestro v. U.N.T.S.,* supra a la pág. 942; *C.O.P.R. v. S.P.U., supra*; Regla 32 (C) Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

En el caso que nos ocupa no estamos ante ninguno de esos escenarios. Con estos antecedentes, resolvemos conforme a la norma

deferencia que rige la revisión de un laudo arbitral por parte del foro primario. En ausencia de las circunstancias excepcionales contempladas por nuestro ordenamiento, no se justifica nuestra intervención, toda vez que derrotaría los propósitos fundamentales del arbitraje.

IV

Por los fundamentos que anteceden, denegamos la expedición del auto de *certiorari* solicitado por los Peticionarios.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones